JAZZY D. COLLIER )
) 1:08-cv-119/1:06-cr-57
)
v. ) Judge Mattice
)
UNITED STATES OF AMERICA )

# MEMORANDUM AND ORDER

Jazzy D. Collier ("Collier") has filed a motion to vacate, set aside, or correct his sentence, entered in his criminal case No. 1:06-cr-57 pursuant to 28 U.S.C. § 2255 [Court Doc. 90]. On February 12, 2007, Collier executed a plea agreement by which he pled guilty to four counts of obstructing commerce by robbery in violation of 18 U.S.C. §§ 1951 and 2, and two counts of brandishing a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. On May 14, 2007, Collier was sentenced to be imprisoned for a term of 441 months.

As the Court reads Collier's motion, he essentially asserts that in his criminal case, he was deprived of effective assistance of counsel based on his lawyers' failure or refusal to raise two sets of issues, one relating to the Court's jurisdiction over his case, and the other relating to the calculation of his advisory sentencing range pursuant to the United States Sentencing Guidelines (hereinafter sometimes abbreviated as "U.S.S.G."). Because, however, it appears plainly from the instant § 2255 motion and from Collier's criminal file that he is not entitled to relief, the United States Attorney is not required to file an answer in this matter. For the reasons explained below, the Court has determined that

a hearing is not necessary, and further concludes that the § 2255 motion [Court Doc. 90][1] lacks merit and will be **DENIED**.

I.      **28 U.S.C. § 2255 - STANDARD OF REVIEW**

The Court must vacate and set aside a sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . " 28 U.S.C. § 2255(b). Under Rule 4 of the Rules Governing Section 2255 Cases In The United States District Courts, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and records of the relevant prior proceedings, reveals the movant is not entitled to relief. If it plainly appears that movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

To warrant relief under 28 U.S.C. § 2255 due to constitutional error, the error must be of constitutional magnitude and have had a substantial and injurious effect or influence on the proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Hill v. United States*, 368 U.S. 424, 428 (1962); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988

---

[1] The Court's record citations refer to the document numbers on the docket for Collier's criminal case (1:06-cr-57) rather than his civil case (1:08-cv-119).

(1978). To warrant relief due to an error not of constitutional magnitude, there must be a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of due process. *Reed*, 512 U.S. at 354; *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

"It is a 'well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)). A defendant must show a "fundamental defect" in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error which violates due process in order to prevail under 28 U.S.C. § 2255. *Fair*, 157 F.3d at 430; *see also Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994).

## II. FACTUAL BACKGROUND

The following facts supporting Collier's plea of guilty are taken from his plea agreement:

> a. On or about April 8, 2006, co-defendant Mills, wearing a gray "hoodie," entered the Conoco at 3326 Ringgold Rd. in East Ridge, TN and demanded money from the register. He displayed a silver pistol while making this demand. He got the money and fled to a waiting small, white car with drive-out tags. The defendant helped plan this robbery and was in the car during it. He split the proceeds and was aware that co-defendant Mills had a gun when he committed the robbery. The robbery and the car were caught on videotape.
>
> b. On or about April 9, 2006, the defendant and co-defendant Mills entered the Kangaroo Express at 6960 Lee Highway in Chattanooga, TN. One subject was wearing a blue hoodie and the other one was wearing a red hoodie. One of the subjects pointed a silver pistol at the clerk and

3

stated, "give me the money bitch." They then started counting down from five. They got the money and fled. The robbery was recorded on videotape.

  c. On or about April 9, 2006, the defendant and co-defendant Mills entered the BP Station at 3984 Ringgold Road in Chattanooga, TN. One subject was wearing a black hoodie and the other one was wearing a yellow hoodie. One subject pointed a silver pistol at the clerk and stated, "give me the [money] or I'll blow your brains out." They then started counting down from five. They got the money and fled. The robbery was recorded on videotape.

  d. On or about April 17, 2006, the defendant and co-defendant Mills entered the Kangaroo Express at 4011 Ringgold Road in Chattanooga, TN. One subject was wearing a gray hoodie. One subject pointed a silver pistol at the clerk and stated, "give me the [money] or I'll blow your brains out." They then started counting down from five. They got the money and fled. They got into a small, white car without a license tag. A girl was driving the car. The robbery was recorded on videotape.

  e. On April 21, 2006, the East Ridge Police responded to 3329 Ringgold Road (across the street from the scene of the 1st robbery) on a suspicious car call. The car had been sitting in a parking lot for several minutes, and it matched the small, white car with drive-out tags that had been involved in all the recent robberies. The passengers, co-defendant Mills in front seat and the defendant in the back, had no identification. Co-defendant Mills said he was born in 1927. He was born in 1986. The police asked the driver, co-defendant Glenn, for consent to search the car, which she gave. Under the passenger seat, between where the defendant and Mills were sitting, the police found a small, silver .38 caliber revolver. Co-defendant Gelnn [sic] gave conflicting stories on whose gun it was, and both the defendant and co-defendant Mills denied ownership. Co-defendant Mills was wearing a gray hoodie. The subjects, the car, the gun, and the hoodie matched the description of the robberies. The whole scene was recorded on video.

  f. The police took all three defendants into custody, mirandized them, and they each gave statements. The statements were recorded on audio tape.

  g. Co-defendant Glenn admitted that she was the driver on all four robberies and that co-defendant Mills and the defendant committed each of them. She said they split the money evenly. She has pled guilty to these charges and agreed to testify truthfully against the defendant.

4

      h.     The defendant admitted on tape to taking part in at least one of the robberies. He now admits that he was involved in and profited from all four robberies.

      i.     All of the above-mentioned business [sic] which were the victims of the robberies charged in Counts One, Three, Five, and Seven of the indictment were engaged in selling items that were purchased in interstate commerce and were businesses which affected interstate commerce.

      j.     All of the above-described events occurred in the Eastern District of Tennessee.

(Court Doc. 64, Plea Agmt., pp. 7-9.)

## III. PROCEDURAL BACKGROUND

Collier pled guilty to four counts of robbery in violation of 18 U.S.C. §§ 1951 and 2 (also known as the "Hobbs Act"), and two counts of brandishing a firearm in relationship to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. On May 14, 2007, this Court sentenced Collier to a total of 441 months imprisonment, five years supervised release, imposed a $600.00 special assessment, and ordered restitution in the amount of $1,273.00. (Court Doc. 81, Judgment, pp. 1-6.)

The United States Sentencing Guidelines total offense level for Collier was determined to be 25; his criminal history category was I and his guideline range on the Hobbs Act robbery charges was calculated as 57-71 months imprisonment, but the two § 924(c) counts increased his guidelines to an effective range of 441-455 months. Collier did not pursue a direct appeal.

5

Case 1:06-cr-00057-HSM-CHS   Document 93   Filed 07/17/09   Page 5 of 17   PageID #: 57

## IV.    DISCUSSION

In his § 2255 motion, Collier essentially brings claims of ineffective assistance of counsel against both of the attorneys appointed to represent him. Collier's first attorney, Mr. Hinton, was permitted to withdraw prior to the entry of his guilty plea. (Court Doc. 47.) Thereafter, Mr. Cavett was appointed to represent Collier. (*Id*.) Collier alleges both attorneys were ineffective for failing to pursue a "jurisdictional hearing." (Court Doc. 90 at 5-8.) Collier also contends the Court violated his due process rights when it assumed it had jurisdiction. In addition, Collier claims his second attorney and the Court were deficient for failing to explain that he could enter a conditional plea and appeal the jurisdiction question. Lastly, Collier claims Mr. Cavett was ineffective for failing to request a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2) "based on Amendment 599."[2]

---

[2] Initially, the Court notes that Collier has not provided any factual support for any of his claims. When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959), *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Although Collier makes specific claims, he has failed to provide any factual support for each of his claims in violation of Rule 2(b)(2) of the Rules Governing Section 2255 Proceedings for the United States District Court. Rule 2(b)(2) provides that the motion must include the facts supporting each ground. Collier's motion fails to meet the factual-support requirement. Consequently, Collier's factually unsupported allegations and conclusions are insufficient to warrant any § 2255 relief. Nevertheless, for the sake of thoroughness, the Court will, to the extent possible, attempt to analyze Collier's factually unsupported claims.

-6-

### A. Ineffective Assistance of Counsel

The United States Supreme Court, in *Strickland v. Washington*, 466 U.S. 668 (1984), established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements: (1) that counsel's performance was deficient, *i.e.,* counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment, and (2) that counsel's deficient performance prejudiced the defense, *i.e.,* deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88.

There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance and that conduct cannot be viewed in hindsight, but must be evaluated for reasonableness within the context of the circumstances at the time of the alleged errors. *Id*. at 689-90. A defendant's challenge to such decisions must overcome a presumption that the challenged actions might be considered sound trial strategy. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).

When a defendant challenges a conviction to which he pleaded guilty, to establish the prejudice prong of *Strickland*, he must demonstrate that without counsel's alleged errors, he would not have pled guilty, but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Griffin v. United States*, 330 F.3d 33, 736-37 (6th Cir. 2003). "[R]eviewing court[s] must

remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998) (quoting *Strickland v. Washington*, 466 U.S. at 690). "An error of counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Strickland*, 466 U.S. at 691.

Although the Supreme Court in *Strickland* discussed the performance prong of an ineffectiveness claim before the prejudice prong, the Court made clear that "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. The Supreme Court instructed that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

In the case at bar, because the Court has concluded that the substantive issues raised by Collier are without merit, and thus that Collier suffered no prejudice by his attorneys' failure (or refusal) to raise them, the Court will address the prejudice prong of the *Strickland* test first, thereby obviating the need to address the performance prong. As stated previously, Collier's motion raises two substantive issues, one relating to the Court's jurisdiction over his case, and one relating to the calculation of his advisory sentencing range pursuant to the United States Sentencing Guidelines.

1. *__Jurisdiction__*

Collier claims both his attorneys were ineffective for failing to pursue a motion for a hearing on the issue of jurisdiction. He also claims that Mr. Cavett and the Court were deficient for failing to explain he could appeal the jurisdiction question and that the Court violated his due process rights when the Court assumed it had jurisdiction in this case. Because the Court concludes there is no viable jurisdictional claim counsel should have raised, and that both the Government and the Court properly exercised jurisdiction as explained below, Collier has failed to demonstrate counsel was ineffective and has failed to demonstrate that the Court violated his due process rights for failing to advise Collier regarding his jurisdictional claim.

When the sentencing court lacks jurisdiction, 28 U.S.C. § 2255 specifically provides for relief. Collier's failure to present a jurisdictional argument at a prior stage of the proceedings does not prevent him from collaterally attacking the sentence under § 2255 because a valid guilty plea does not waive jurisdictional defects. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *United States v. Harper*, 901 F.2d 471, 472 (5th Cir. 1990) (guilty plea does not waive jurisdictional defects).

Because Collier has failed to provide the factual support upon which he relies, the Court has admittedly struggled to ascertain his intended grounds for challenging jurisdiction. To the extent that Collier may be claiming the Court lacked jurisdiction to preside over his criminal proceedings, he is simply incorrect. Title 18 U.S.C. § 3231 provides that: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."

"Subject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231, and there can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts. That's the beginning and the end of the 'jurisdictional' inquiry." *Hugi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999); *see also United States v. Titterington*, 374 F.3d 453, 458-59 (6th Cir. 2004) ("The federal courts' subject-matter jurisdiction to hear federal criminal prosecutions comes from 18 U.S.C. § 3231 . . . ").

To the extent Collier may be claiming that the Court lacked subject-matter jurisdiction on the basis of some defect in the indictment (which is not apparent to the Court), he is not entitled to relief because the Supreme Court has held that "defects in an indictment do not deprive a court of its power to adjudicate a case" and thus are not "jurisdictional." *United States v. Cotton*, 535 U.S. 625, 630 (2002).

To the extent Collier may be claiming the United States lacked jurisdiction to prosecute him for robbery and brandishing a firearm in Tennessee because the state did not transfer legislative jurisdiction to the federal government, he is also mistaken. Federal courts have exclusive jurisdiction over offenses against the laws of the United States, pursuant to 18 U.S.C. § 3231. When a federal law is violated, the explicit permission of the state in which the offender committed his crime against the United States is not a prerequisite for the United States to exercise jurisdiction. *United States v. Bryson*, 14 Fed. App'x 316, 317 (6th Cir. 2001) (citing *United States v. Sitton*, 968 F.2d 947, 953 (9th Cir. 1992).

-10-

Additionally, 28 U.S.C. § 123(a)(1) provides that the jurisdiction of the Eastern District of Tennessee includes Hamilton County, Tennessee, where Collier's crimes were committed. Collier admitted in his plea agreement that the crimes occurred in the Eastern District of Tennessee. (Court Doc. 64 at 9.) Moreover, the question of ownership of property on which the offense occurred is not to be considered when the crime is specifically prohibited by federal criminal statutes. *See United States v. Burchett*, 1993 WL 473689, *1 (6th Cir. Nov. 16, 1993). Moreover, the particular crimes of which Collier was convicted – Hobbs Acts robberies and 18 U.S.C. § 924(c) violations – have been held explicitly to fall within the criminal jurisdiction of the United States, based on the commerce clause of the United States Constitution. *United States v. Smith,* 182 F.3d 452, 456 (6th Cir. 1999). Accordingly, this Court clearly had jurisdiction over the case because it involved offenses against the laws of the United States which were committed in the Eastern District of Tennessee.

Collier may be mistakenly asserting a "jurisdictional" defect based on the premise that Congress may regulate only activities which affect interstate commerce. *United States v. Lopez*, 514 U.S. 549, 559 (1995). Although both lawyers and judges sometimes refer to the interstate-commerce element as the "jurisdictional element," this is a colloquialism and shows "that the word 'jurisdiction' has so many different uses that confusion ensues." *Hugi*, 164 F.3d at 380. The interstate nexus requirement for any federal crime "is simply one of the essential elements" and "is not jurisdictional in the sense that it affects the court's subject matter jurisdiction, *i.e.*, a court's constitutional or statutory power to adjudicate a case." *United States v. Martin*, 147 F.3d 529, 531-32 (7th Cir. 1998); *see also*

*United States v. Riddle*, 239 F.3d 529, 536 (6th Cir. 2001) ("This court has explained that the interstate commerce requirements, while referred to as a 'jurisdictional' element, does not affect subject matter jurisdiction, that is, the court's power to hear a case."). "Even if the government fails to establish the [required] connection to interstate commerce, the district court is not deprived of jurisdiction to hear the case." *Martin*, 147 F.3d at 532. Accordingly, regardless of whether Collier could show that the Government had failed to prove the interstate nexus requirement in his case, the Court's jurisdiction would be unaffected.

Finally, if Collier is claiming the government lacked jurisdiction to prosecute him because he did not personally brandish the firearm, his claim is flawed because it is not necessary to find that he personally committed the crime himself. The fact that he intentionally helped or encouraged someone else to commit the crime is sufficient to convict him under an aider and abettor theory. *See United States v. Blood*, 435 F.3d 612, 623 (6th Cir. 2006); *United States v. Bandy*, 239 F.3d 802, 805 (6th Cir. 2001) ("[A] defendant is liable as an aider and abettor for use of a firearm in relation to a crime of violence when his accomplice uses a firearm in relation to jointly undertaken criminal activity.").

As admitted in his plea agreement, Collier participated in these robberies and knew his accomplice was entering the establishment armed. (Court Doc. 64 at 8-9.) Not only did Collier admit he was aware his co-defendant had a gun when he committed the robberies, he pled guilty to aiding and abetting brandishing a firearm. (*Id*. at 1.) Applying the standards for aiding and abetting to Collier's convictions for brandishing a firearm, his

conviction for brandishing a firearm under the aiding and abetting theory was supported by sufficient evidence.

In sum, Collier has simply failed to make out any viable jurisdictional challenge of which the Court can conceive. There is no question that the Court had jurisdiction to address the charges against Collier. Therefore, his attorneys' failure to raise that issue did not constitute deficient performance, and he suffered no prejudice when his attorneys presumably concluded that, in their professional judgment, they had no basis to raise such a jurisdictional claim. In addition, since the Court had jurisdiction to consider the charges against Collier, his due process rights were not violated. Accordingly, no § 2255 relief is warranted on Collier's claims that his attorneys were ineffective for failing to file a motion for a jurisdictional hearing or that the Court violated his due process rights when it exercised jurisdiction over Collier in his criminal case.

The resolution of this jurisdiction issue resolves all claims asserted by Collier with the exception of one remaining ineffective assistance of counsel claim, which is discussed below.

2.  *U.S.S.G. §2K2.4, App. Note 4 ("Amendment 599").*

Collier claims his second attorney, Mr. Cavett, failed to file a motion pursuant to 18 U.S.C. § 3582(c)(2) to reduce his sentence on the basis of "Amendment 599." Amendment 599 apparently refers to the numbered amendment to the United States Sentencing Guidelines which became effective on November 1, 2000 and which was incorporated into what is now Application Note 4 (formerly Note 2) to § 2K2.4 of the Guidelines. The actual language of Amendment 599 is as follows:

-13-

If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense. A sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Do not apply any weapon enhancement in the guideline for the underlying offense, for example, if (A) a co-defendant, as part of the jointly undertaken criminal activity, possessed a firearm different from the one for which the defendant was convicted under 18 U.S.C. § 924(c); or (B) in an ongoing drug trafficking offense, the defendant possessed a firearm other than the one for which the defendant was convicted under 18 U.S.C. § 924(c). However, if a defendant is convicted of two armed bank robberies, but is convicted under 18 U.S.C. § 924(c) in connection with only one of the robberies, a weapon enhancement would apply to the bank robbery which was not the basis for the 18 U.S.C. § 924(c) conviction.

If the explosive or weapon that was possessed, brandished, used, or discharged in the course of the underlying offense also results in a conviction that would subject the defendant to an enhancement under § 2K1.3(b)(3) (pertaining to possession of explosive material in connection with another felony offense) or §2K2.1(b)(5) (pertaining to possession of any firearm or ammunition in connection with another felony offense), do not apply that enhancement. A sentence under this guideline accounts for the conduct covered by these enhancements because of the relatedness of that conduct to the conduct that forms the basis for the conviction under 18 U.S.C. § 844(h), § 924(c) or § 929(a). For example, if in addition to a conviction for an underlying offense of armed bank robbery, the defendant was convicted of being a felon in possession under 18 U.S.C. § 922(g), the enhancement under §2K2.1(b)(5) would not apply.

U.S.S.G. Supp. to App. C, amend. 599 (2000). Collier does not explain why he is entitled to have his sentence reduced due to Amendment 599 and, for the reasons explained

-14-

below, the Court concludes Amendment 599 does not afford Collier any grounds for any such reduction.

The Court would first note that Amendment 599 became effective on November 1, 2000, approximately seven years prior to Collier's sentencing and by then was incorporated into what is now known as Application Note 4 to § 2K2.4 of the United States Sentencing Guidelines. Collier was sentenced, on May 14, 2007, under the 2006 version of the Guidelines, which incorporates that Application Note. Title 18 U.S.C. § 3582(c)(2) permits a reduction in sentence for a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the United States Sentencing Commission pursuant to 28 U.S.C. 994(o). Consequently, Collier is not entitled to a reduction in sentence since the amendment he relies upon became effective prior to his sentencing.

Nevertheless, the Court will presume Collier is claiming counsel was ineffective for failing to object to the Court sentencing him in violation of Amendment 599. In summary, Amendment 599 provides that no enhancement under the Guidelines is applied for brandishing a firearm where the defendant is also convicted and sentenced based upon an underlying offense involving the same firearm. Specifically, § 2K2.4 makes clear that when a defendant is convicted under section 924(c) for conduct related to an underlying offense, the sentence for the underlying offense cannot be enhanced by "any specific characteristic for possession, brandishing, use, or discharge of an explosive or firearm. . . . However, if a defendant is convicted of two armed bank robberies, but is convicted under 18 U.S.C. § 924(c) in connection with only one of the robberies, a weapon enhancement would apply to the bank robbery which was not the basis for the 18 U.S.C.

-15-

§ 924(c) conviction." U.S.S.G. § 2K2.4, App. Note 4.  The rationale is that the sixty-month sentence for the section 924(c) conviction already takes into account the offense conduct for the firearm.  *See United States v. Johnson*, 2007 WL 1412241, *2 (M.D. Pa. May 11, 2007).

Collier accuses counsel of being constitutionally deficient because he failed to object to his sentence based on Amendment 599.  A review of the Presentence Investigation Report ("PSR") in his case, reveals that Collier did indeed receive the benefit of Amendment 599 with respect to the offenses charged in Counts One and Three of the Indictment.  Although Collier or his co-defendant brandished a firearm in each of the four armed robberies to which he pled guilty, the PSR did not increase the base offense level for the armed robberies charged in Counts One and Three because Collier pled guilty to brandishing a firearm in connection with those incidents when he pled guilty to violating 18 U.S.C. 924(c) in Counts Two and Four (Counts One and Two involved the same robbery, as did Counts Three and Four).  (PSR at ¶¶ 27 & 35.)  The PSR did, however, increase the base offense level for the armed robberies in Counts Five and Seven because Collier did not plead guilty to the § 924(c) charges associated with those robberies (Counts Six and Eight of the Indictment, which were the § 924(c) offenses linked with the robberies charged in Counts Five and Seven, were dismissed).  (PSR at ¶¶ 43 & 50.)

In sum, the Court concludes that Collier's sentencing guideline range was properly calculated in accordance with the provisions of Amendment 599.  Thus, he has failed to demonstrate that counsel was deficient or that he suffered any prejudice as a result of counsel's failure to challenge his guideline range based on Amendment 599.  Accordingly,

Collier's claim of constitutionally ineffective counsel for failing to raise an argument that is clearly devoid of legal merit is rejected.

## V. CONCLUSION

For the reasons set forth above, the Court concludes Collier has failed to present any facts which establish that his conviction or sentence is subject to collateral attack under 28 U.S.C. § 2255. Accordingly, Mr. Collier's instant motion [Court Doc. 90] is **DENIED.**[3]

A separate judgment will enter.

                                                    */s/Harry S. Mattice, Jr.*
                                                    HARRY S. MATTICE, JR.
                                          UNITED STATES DISTRICT JUDGE

---

[3] Collier also filed a motion for appointment of a three-judge panel pursuant to 28 U.S.C. 2284(a)(b)(1) to hear and determine his § 2255 motion (Court Doc. 92). Collier's reliance on Title 28 U.S.C. § 2284(a)(b)(1) is misplaced. First, 28 U.S.C. § 2284 provides that "[a] district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." Second, Rules 1, 3, and 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts require a § 2255 motion to be filed in the district court in which the challenged judgment was entered and delivered to the judge who conducted the proceedings being challenged. Accordingly, Title 28 U.S.C. § 2284 is not applicable to § 2255 proceedings, and thus, Collier's motion to have a three-judge panel determine his instant § 2255 motion [Court Doc. 92] is **DENIED** because § 2284 does not entitle Collier to consideration of his § 2255 motion by a three-judge panel.